# UNION PACIFIC RAILROAD COMPANY *v.* HUXOLL, ADMINISTRATRIX OF HUXOLL.

ERROR TO THE SUPREME COURT OF THE STATE OF NEBRASKA.

No. 104.  Argued December 21, 1917.—Decided January 21, 1918.

The question whether any substantial evidence was introduced to justify submission of a case to the jury on the issue of proximate causal negligence is one of law, reviewable by this court, in an action under the Federal Employers' Liability Act, coming from a state court.

A railroad employee was run down and killed in a switching yard by a switching engine, backing on a track, between the rails of which he was walking in the opposite direction.  He was passing through an extensive cloud of steam and smoke coming from a round-house and nearby engines, which had settled upon the tracks on a very cold and windy day.  The cloud was dense but shifting, so that at times one might see through it considerable distances, and at others but

a very short distance. *Held*, that deceased was guilty of contrib-
utory negligence.

Under the Federal Employers' Liability and Safety Appliance Acts,
contributory negligence avails the carrier neither as a defense nor
in diminishing damages, if its failure to observe the latter act by
having the power-brake of its locomotive in working order con-
tributed in whole or in part to cause the death of the employee.

Upon the conflict of testimony introduced, considered in the aspect
least favorable to the plaintiff in error, *held*, that it was not error to
submit the case to the jury on the question whether the defective
condition of the power-brake contributed, in whole or in part, to
cause the fatal result.

99 Nebraska, 170, affirmed.

THE case is stated in the opinion.

*Mr. N. H. Loomis* and *Mr. C. A. Magaw* for plaintiff in
error.

*Mr. Halleck F. Rose,* with whom *Mr. Walter V. Hoag-
land, Mr. Wilmer B. Comstock, Mr. John F. Stout* and
*Mr. Arthur R. Wells,* were on the brief, for defendant in
error.

MR. JUSTICE CLARKE delivered the opinion of the court.

Fred J. Huxoll, a locomotive engineer in the employ of
the plaintiff in error, was run down by a switching engine,
about 11 o'clock in the morning, in a switching yard of
the company at a division point in Nebraska, and subse-
quently died of the injuries which he received.

The weather was very cold, with a high wind blowing
and a cloud of steam and smoke, from engines standing
nearby the scene of the accident and from a round-house
farther away, had settled down upon the tracks, and it
was while passing through this that the deceased was
struck by the engine. This cloud of steam and smoke is
described by one witness as extending 300 or 400 feet along

the tracks, and by another for about 100 to 200 feet. It varied in density and shifted with the wind, so that at times one could see considerable distances through it while at other times it was so dense that it was possible to see only a very short distance. Huxoll was walking eastward through this cloud of smoke and steam and was between the rails of one of the tracks when an engine backing toward the west struck him in such a manner that the tender passed over him, and when the engine was stopped he was opposite the main driving wheel, with his right wrist under the wheel on the rail.

Judgment was rendered by the trial court on a verdict in favor of the plaintiff, which was affirmed by the Supreme Court of Nebraska and, the case being one to which the Federal Employers' Liability Act is applicable, it is now here on writ of error.

There are many claims of negligence in the petition, but the court submitted only three of them to the jury, and of these we need consider but one instruction, viz:

Was the power brake on the engine in working order at the time of the accident, and if it was not, did this defect contribute "in whole or in part" to cause the death of Huxoll?

The oral argument of counsel for the plaintiff in error was practically confined to the proposition that the trial court committed reversible error in submitting these questions to the jury, for the reason that, even if it be assumed (as it must be for there is sharp conflict on the point) that the power brake was not in working order, there was no substantial evidence in the case that this failure contributed "in whole or in part" to cause the death of Huxoll.

The engineer did not see the deceased at the moment he was struck, and it is argued that there is no substantial evidence to show how much farther the engine ran after he was notified of the accident than it would have run if the power brake had been properly applied, or that

the running of the engine such distance, whatever it may have been, added anything to the injuries of the deceased and so contributed to cause his death.

It is necessary for us to examine the evidence in the record to determine the validity of this claim for the reason that it presents a federal question, not of fact but of law, (*Creswill* v. *Knights of Pythias*, 225 U. S. 246, 261; *Seaboard Air Line Ry.* v. *Padgett*, 236 U. S. 668, 673), and it relates to the only negligence claimed in the case which, if proved, would relieve the defendant in error, as the charge of the court in the instruction we are considering relieved her, from the necessity of having her recovery diminished by the jury in proportion to the amount of negligence attributable to her decedent, who was obviously guilty of contributory negligence in walking on the track under the conditions shown.

The Federal Employers' Liability Act of April 22, 1908, 35 Stat. 65, is confessedly applicable to the case and the rule of liability prescribed by this and the Safety Appliance Act of March 2, 1893, 27 Stat. 531, is, as the trial court charged, that if the failure to have the power brake in working order contributed "in whole or in part" to cause the death of deceased, the plaintiff in error would be liable in damages and neither contributory negligence nor assumption of risk could avail the company as a defense or in diminishing the damages.

There is conflict in the evidence; as to the speed at which the engine was moving when it entered the cloud of steam and smoke—the estimates vary from three miles to ten miles an hour; as to the distance within which the engine with the power brake properly working could have been stopped under the conditions which existed at the time of the accident,—the estimates vary from "almost instantly"—eight to ten feet,—to forty feet; as to when the engineer received notice that the deceased had been struck—the statements vary, from almost the instant the

man was struck, to considerably later; as to the distance which the engine ran after striking the deceased—the estimates vary from thirty to about one hundred and thirty-five feet; as to the distance which the engine ran after the engineer had notice of the accident—the engineer testified at one time that he thought it did not exceed forty feet, while other testimony tended to show that it must have been considerably more than a hundred feet; and as to the lookout which the engineer was keeping when the accident occurred.

The first wheel to actually strike the deceased was the "main" driving wheel—the middle one of three—and this was standing on his right wrist when the engine was stopped, so that the entire tender and quite one-half of the engine proper, including the fire-box, passed over his body which was found so wedged beneath the engine that it was necessary to remove the brakerods to release him.

The deceased was not instantly killed but was conscious and talked some during the forty-five minutes which elapsed before he was released from under the engine and also later in the day while on the way to the hospital at Cheyenne, and he did not die until two o'clock the next morning. The injuries which caused his death are not described beyond the bare statement that the driving wheel rested on the wrist of his right arm, that that arm was found afterwards to be torn from the shoulder and that his scalp was badly cut.

Considering this conflicting testimony in the aspect of it least favorable to the company, as we must on this review, it results that there is evidence tending to show, that, while the engineer did not see the man struck, he was notified almost instantly by a call to stop from the one witness who says he saw him struck, and that if the power-brake had been working the engineer could have stopped his engine, running three or four miles an hour, "almost instantly,"—"in eight to ten feet," but that in fact it

ran for approximately one hundred and thirty-five feet after striking the deceased, with his body under the tender or engine almost the entire time.

Demonstration is not required in such a case as we have here but responsibility for the accident must be determined upon the reasonable conclusions to be drawn from the evidence, and it is impossible for us to conclude that the conflict which we have thus described does not present evidence sufficient to justify the submitting of the case to the jury for its determination as to whether the deceased, who survived the accident for fifteen hours, received injuries which contributed in part, at least, to the fatal result, during the time that the engine was being negligently run for a distance which there is evidence tending to show was at least one hundred feet, with his body all the time being dragged and crushed between the frozen ballast of the track, the low-hanging attachments of the tender and the rods of the driving wheel brakes with which his body was found so entangled that it required forty-five minutes to release him from his desperate situation. It is significant that the men who were there, with all of the conditions before their eyes, thought that further movement, even the slightest, of the engine, would result in further injury to the deceased and that, for this reason, they would not permit it to be moved at all, but thought it necessary to remove the brakerods in order to release him, even though this required that he be exposed to the cold in much below zero weather for forty-five minutes.

The judgment of the Supreme Court of Nebraska must be

*Affirmed.*