G. Emma Hodgman, Administratrix,

*vs.*

Sandy River & Rangeley Lakes Railroad.

Franklin.    Opinion June 18, 1919.

*Actions under Federal Employer's Liability Act.    Rule as to an injured employee
being held to assume the risk where defendant company has used cars or
appliances contrary to the statute.    Burden of proof to show that
absence of appliances enumerated in Statute contributed
in whole or in part to the cause of accident.*

This is an action to recover damages resulting from injuries sustained by Frank R. Hodgman, the plaintiff's intestate. The jury returned a verdict for the plaintiff in the sum of six thousand six hundred and fifty dollars, and the case is before the court on the defendant's general motion.

*Held:*

1.    The failure to equip the engine with power driving-wheel brakes was a violation of Sec. 8605 of the Federal Statutes requiring the same.

2.    This fact alone does not make the defendant liable per se; the burden is still on the plaintiff to show that the absence of such brakes contributed in whole or in part to produce the accident.

3.    The testimony fails to show a substantial compliance with the Act, as claimed by defendant, and we are very clear that any improvement to other parts of the engine or tender could not take the place of the power driving-wheel brakes required by law.    The engine was not properly and lawfully equipped without such brakes.    In our view there can be no such substantial compliance shown to relieve the defendant from strict compliance with the statute.    The law required the power driving-wheel brakes; and the plaintiff's intestate was entitled to have such brakes installed so he could use them when necessary.

4.    The evidence carefully considered confines us to these inquiries, which were in their order submitted to the jury, with the question of due care of the plaintiff's intestate and the speed of the train, under proper instruction:

1.    If the brakes were on the driving wheels as required by law, would they have steadied the engine?

The evidence shows they would.

2.    Would the plaintiff's intestate have used the brakes?

The jury have said that he would.

3. Is there sufficient evidence upon which they could base their conclusion?

There is no positive evidence on this point, but from the inferences to be drawn from the undisputed facts, ordinary fair-minded, reasonable men might differ. It was thus clearly a question for the jury, and we find nothing in the case to indicate bias, prejudice or misunderstanding, the verdict being so reasonable in amount as to show a perfectly fair mind toward the defendant.

Action under Federal Employer's Liability Act to recover damages on account of alleged negligence of defendant company. Defendant filed plea of general issue and also brief statement. Verdict for plaintiff. Defendant filed a motion for a new trial. Motion overruled. Case stated in opinion.

*McGillicuddy & Morey,* for plaintiff.

*Frank W. Butler, and White & Carter,* for defendant.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, WILSON, DEASY, JJ.

HANSON, J. This is an action to recover damages resulting from injuries sustained by Frank R. Hodgman, the plaintiff's intestate. The jury returned a verdict for the plaintiff in the sum of six thousand six hundred and fifty dollars, and the case is before the court on the defendant's general motion. The question of excessive damages was not argued by the defendant's counsel.

Frank R. Hodgman was a locomotive engineer in the employment of the defendant, and on the day of the accident was in charge of Engine No. 8 belonging to and in use by the defendant company which at the time was a common carrier engaged in interstate commerce. The engine was what is known as the "Portland Type", and was built some seven or eight years prior to the accident by the Baldwin Locomotive Works. It was similar to all other narrow-gage type—the engine and tender were built all together on one frame instead of being built separately and coupled together as the broad-gage engines are. There were no power brakes on the four drive wheels, but there were power air brakes on the four wheels under the rear or tender part of the engine, and on the train. These brakes, all of them, were operated from the cab by the engineer, exactly the same as all Westinghouse Air Brakes systems are operated. Some time after the engine was purchased, the mechanical contrivances for equalizing the distributing of the weight on the springs

were changed. The engine rolled or listed when going over bad track or around curves. The levers controlling the brakes, steam and reverse levers, were all situated in the cab and in reaching distance from the engineer's seat.

The scene of the accident was a few miles out of Farmington near a flag-station called Fairbanks. The railroad running out of Farmington gradually runs up hill until the summit is reached, then slopes down into the valley, crosses a bridge, and immediately starts up a sharp grade and into a heavy curve on this up grade. It was at the beginning of this curve that the engine rolled over and was ditched, fatally injuring the driver, the plaintiff's intestate, Frank R. Hodgman.

Shortly after noon on August 11, 1917, the Sandy River and Rangeley Lakes' train pulled out of Farmington for Rangeley. Frank R. Hodgman was the engineer, and a Mr. Presby was the conductor. The air brakes were tested and reported in good order before leaving Farmington. Fairbanks is the next station. Mr. Hodgman, the engineer, started with the train in his sole control as to speed. He pulled up to the summit, then pitched over the top, going down grade at a good rate of speed, working live steam all the way down the grade and over the bridge. He also worked live steam up the grade toward the curve, keeping the speed of the train up as fast going up hill as on the down grade. He applied no brakes nor did he shut off the steam, but kept the speed of the train sustained, using live steam up the hill as he entered the curve. When the engine reached the curve, it "rolled up" and over, ditching itself and fatally injuring Hodgman.

It is admitted that the action is properly brought under the Employers Liability Act, and that the defendant company is in violation, technically only, of the Safety Appliance Act, so called. The action is brought under Sec. 8605 of Chap. C, and Secs. 8657, 8658 and 8659 of Chap. E of the Revised Statutes of the United States, and plaintiff further relies on the provision of Sec. 8612 of the R. S. U. S., relating to assumption of risk.

Sec. 8605 of Chap. C of the R. S. of the United States reads as follows:

"From and after the first day of January, eighteen hundred and ninety-eight, it shall be unlawful for any common carrier engaged in interstate commerce by railroad to use on its line any locomotive

engine in moving interstate traffic not equipped with a power driving-wheel brake and appliances for operating the train brake system, or to run any train in such traffic after said date that has not a sufficient number of cars in it so equipped with power or train brakes that the engineer on the locomotive drawing such train can control its speed without requiring brakemen to use the common hand brake for that purpose."

The failure to equip the engine with power driving-wheel brakes was a violation of Sec. 8605 of the Federal Statutes requiring the same, while Sec. 8612 of the Statute provides that "Any employee of any such common carrier who may be injured by any locomotive, car, or train in use contrary to the provisions of this act shall not be deemed thereby to have assumed the risk thereby occasioned, although continuing in the employment of such carrier after the unlawful use of such locomotive, car, or train had been brought to his knowledge." *Union Pacific R. R. Co.* v. *Huxol*, 245 U. S. Rep., 535; *Louisville & Nashville R. R. Co.* v. *Layton*, 243 U. S. Rep., 617.

The defendant's counsel frankly admits that "technically the defendant was in violation of the Safety Appliance Act", and argues that improvements were made which amount to a substantial compliance with the Statute, but we find no warrant for saying that a mechanical contrivance for equalizing the distributing of the weight on the springs, an improvement in no way affecting the speed of an engine, is a substantial compliance with the statute requirement that the engine shall be equipped with a power driving-wheel brake.

Counsel urges that the provisions of Sec. 8660, in view of their claim that the accident was due to the negligence of Hodgman, and not to the absence of a power brake, is a bar to this action, because it is not shown that the absence of power brakes contributed to the accident. The Section reads: "In any action brought against any common carrier under or by virtue of any of the provisions of this Act to recover damages for injuries to, or the death of, any of its employes, such employee shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." And urging defendant's rights thereunder, counsel contends that the proximate cause of the injury was the speed of the train when it reached the curve in the track, and that the speed of the train was in the sole

control of the plaintiff's intestate, and was caused "by his own wanton, reckless and indifferent conduct in running too fast for safety when going onto a curve."

With the other questions presented to the jury, this subject was considered and with it the testimony of the witnesses that the engineer was running slower than the established schedule time by one minute. It was solely for the jury under proper instruction, which we must assume was properly given.

Counsel further argues that an additional and vital question was, "did the absence of the driver brakes from the engine contribute in whole or in part to the speed of the train," and insists that it did not. This, like all the other questions here noted, was the subject of very careful inquiry both in the examination in chief and in cross-examination, and was necessarily, from the very nature of the case, a leading question, and as necessarily associated with all the other questions submitted to the jury. That it was submitted to the jury with proper instruction is apparent.

The evidence shows conclusively that the Federal Statutes were not complied with in that the engine was not equipped with power driving-wheel brakes. This fact alone does not make the defendant liable per se; the burden is still on the plaintiff to show that the absence of such brakes contributed in whole or in part to produce the accident.

The principal reliance of defendant's counsel is stated in their brief statement, in these words:

"1.   That the said defendant was not in violation of the Safety Appliance Act, so-called, together with all subsequent amendments thereto, being Chapter 196 of Volume 27 of the Statutes of the United States, at page 531, but said defendant had made a substantial compliance with said Act by equipping its trains, cars and engines with all the safety appliances required by said Act.   2.   That the said plaintiff was not in the exercise of due care at the time of and prior to the fatal accident which resulted in his death."

As to these contentions, the testimony fails to show a substantial compliance with the Act, and we are very clear that any improvement to other parts of the engine or tender could not take the place of the power driving-wheel brakes required by law. The engine was not properly and lawfully equipped without such brakes. In our view there can be no such thing as substantial compliance shown

to relieve the defendant from strict compliance with the statute. The law required the power driving-wheel brakes; and the plaintiff's intestate was entitled to have such brakes installed so he could use them when necessary. It will serve no useful purpose to restate the evidence as to the use and effectiveness of power driving-wheel brakes. The working and effect of such brakes is a matter of common knowledge.

The evidence carefully considered confines us to these inquiries, which were in their order submitted to the jury under proper instruction:

1. If the brakes were on the driving wheels as required by law, would they have steadied the engine?

The evidence shows they would.

2. Would the plaintiff's intestate have used the brakes?

The jury have said that he would.

3. Is there sufficient evidence upon which they could base their conclusion?

There is no positive evidence upon this point, but from the inferences to be drawn from the undisputed facts, ordinary fair-minded, reasonable men might differ. It was thus clearly a question for the jury, and we find nothing in the case to indicate bias, prejudice or misunderstanding, the verdict being so reasonable in amount as to show a perfectly fair mind toward the defendant.

We are not justified in saying that the verdict is manifestly wrong.

The entry will be,

*Motion overruled.*