## PHILADELPHIA & R. RY. CO. v. BRISCOE.

(Circuit Court of Appeals, Third Circuit. March 2, 1922.)

No. 2756.

1. **Death ⚙═►103(2)—Cause of brakeman's death held question for jury.**

Evidence that a brakeman, with another man, was in the caboose of a train standing on the track a few minutes before the caboose was struck and demolished by the engine of a following train, that the bodies of two men were found in the wreckage, and that the body of the brakeman was buried three days later, *held* to warrant submission to the jury of the question whether his death was caused by the collision.

2. **Master and servant ⚙═►286(34)—Negligence causing collision between trains held question for jury.**

Evidence that a block signal was in working order 15 minutes before the approach of a train, and was set at a signal warning the train to stop before entering the block, and that it not only passed it without stopping, but failed to stop when it passed over and exploded torpedoes placed on the rails, and crashed into a train ahead, *held* sufficient to warrant submission to the jury of the question of negligence.

3. **Death ⚙═►95(3)—Measure of damages under federal Employers' Liability Act defined.**

In an action against a railroad company for death of an employé, under Employers' Liability Act April 22, 1908, § 1 (Comp. St. § 8657), which authorizes recovery for the benefit of the widow and children, plaintiff is entitled to recover such sum as would fairly and reasonably compensate such widow and children for the loss of pecuniary benefits which they might reasonably expect to have received, but for the death.

4. **Death ⚙═►69—Evidence of wife's infidelity held inadmissible.**

In an action against a railroad company, under Employers' Liability Act April 22, 1908, § 1 (Comp. St. § 8657), for death of an employé who left a widow and children, evidence offered by defendant to show that the widow had been unfaithful to her husband *held* properly excluded.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Action at law by Catherine Briscoe, administratrix of the estate of Jackson Briscoe, deceased, against the Philadelphia & Reading Railway Company. Judgment for plaintiff (274 Fed. 476), and defendant brings error. Affirmed.

Wm. Clarke Mason, of Philadelphia, Pa., for plaintiff in error.

Frank F. Davis, of New York City, for defendant in error.

Before WOOLLEY and DAVIS, Circuit Judges, and LYNCH, District Judge.

DAVIS, Circuit Judge. This suit was brought by Catherine Briscoe, plaintiff below, for the death of her husband, Jackson Briscoe, under the federal Employer's Liability Act (Comp. St. §§ 8657–8665),

⚙═►For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

as administratrix, on behalf of herself and three children, Liva, Mable, and Helen, aged 6, 10, and 12 years, respectively, at the time of his death. He was employed as a brakeman by the Philadelphia & Reading Railroad Company on one of its freight trains, engaged in interstate commerce. On November 2, 1920, train No. 58, of whose crew Briscoe was a member, came from Tamaqua to the borough of Linfield, Pa., a distance of about 25 miles, and arrived there about 2 o'clock in the morning. Some distance back the train entered a block, and W. T. Walker, a flagman belonging to the crew, went back about 1,800 feet and placed explosive caps on the track, so as to warn train No. 258, which was following on the same track. Shortly after Walker placed caps on the track and started back, train No. 258 passed him. He testified that right after the caps exploded sparks began to fly from the wheels of the train, indicating that the brakes had been applied, yet it ran into train No. 58 with such force that it cut its way through the caboose and four cars. The caboose was practically split wide open and lodged upon the smokestack of the engine of No. 258.

The case was tried to a jury, and a verdict was rendered for the plaintiff for $15,000, which was apportioned, $3,000 to Catherine Briscoe, and $4,000 to each of the three children. The defendant sued out a writ of error to this court, and its various assignments may be stated in the following propositions: (1) The court erred in permitting the jury to find that Briscoe died as a result of injuries received in the collision. (2) The court erred in permitting the jury to find that the collision was due to negligence of the defendant. (3) The court erred in refusing to permit the defendant to examine the plaintiff as to her fidelity to her husband, for the purpose of establishing that she had been unfaithful and had no reasonable expectation of receiving in the future the amount of money she had been accustomed to receive from him.

[1] It is undisputed that, when Walker left the caboose, only two men, Briscoe and Winkler, were in it. It is also undisputed that the on-coming train "demolished" the caboose, in which the bodies of two men were later found. Briscoe and Winkler did not proceed on the trip after the accident. Nobody ever again saw Briscoe alive, and three days later he was buried. Upon these facts, was the court justified in submitting to the jury the question of the cause of Briscoe's death, and was the jury justified in drawing the inference that Briscoe died as a result of the accident?

There was no direct and positive evidence that Briscoe was killed in this collision, but proof of the cause of death is not restricted to direct evidence. This court said in the case of Philadelphia & R. R. Co. v. Marland, 239 Fed. 4. 152 C. C. A. 54:

"True, as to the cause of death there was no direct evidence. But clearly proof of cause of death is not restricted to direct evidence. * * * It may be proved by legitimate inferences drawn from attendant facts, such as the nature of the wound, the position of the body, * * * and the absence of any other suggested or reasonable cause."

There is not a suggestion or even a hint that Briscoe died from any other cause than the accident. The learned trial judge submitted the "attendant" facts to the jury, which found that Briscoe died as a re-

sult of injuries received in the collision. If this conclusion was reasonably drawn from the evidence, and we cannot say that it was not, the case was properly submitted to the jury. Union Pacific Railroad Co. v. Huxoll, 245 U. S. 535, 540, 38 Sup. Ct. 187, 62 L. Ed. 455.

[2] Was the collision due to the negligence of the defendant company? The plaintiff alleged that the collision between the two trains—

"was due solely to the carelessness and negligence of the defendant and of its employees, in that the defendant carelessly and negligently failed to observe signals and to have said train under control."

W. T. Walker, the flagman, was asked with reference to the signals a: the entrance to that block:

"Q. Was it [the signal] working at that time? A. It was when I went by. I was hanging out of the cabin window of the caboose, and it was red and yellow when the caboose went by it.

"Q. Now, that train, up to the point it stopped, * * * did it pass any other automatic signal in that zone before it stopped? A. No, sir; it did not pass nothing else.

"Q. So that the only signal that you saw as you came into the zone, up to the point where you stopped, was working? A. Yes, sir.

"Q. Did you notice any other signal at that place, before you got into that block that you passed? A. Nothing, only this signal that I just told you about.

"Q. Green and yellow indicate what in the automatic block signal system? A. That means caution. That is caution.

"Q. Red and yellow mean what? A. Stop.

"Q. Stop? A. Yes. * * *

"Q. When you passed the place of the red and yellow signal on your way into that block, was it working? A. Yes, sir. * * *

"Q. What signals did you see when you were leaning or looking? A. As it went by me, I could look up and see.

"Q. What was it? A. Then it was red and yellow.

"Q. Red and yellow? A. Yes.

"Q. What does that mean? A. That means stop, but we were by it. We had opened it; we closed that block.

"Q. It means that you had closed the block; then it indicated danger to any on-coming train, did it not? A. Yes, sir."

So there was positive evidence that, when train No. 58 entered the block, the signal was working. When Walker went back to place caps on the track, he did not go back as far as the signal hall, which is a structure of steel standing some distance in the air, and on each side of which are round circles one above the other. These circles have within them smaller colored circles, and the back of the circles are covered almost entirely, with the exception of a small portion in the center. Walker testified that he did not go near enough to distinguish the color of the signal from the back, but on being asked if there was a light in it, said: "Yes, there was a light; sure." So that when train No. 58, about 15 minutes before the accident, entered the block and closed it, the signal was working and showing a red and yellow light, indicating danger and commanding·an on-coming train to stop before entering the block. Fifteen minutes later, and while train No. 58 was standing in the block, there was a light still showing in the signal hall. There is no evidence whatever that the signal got out of order within that 15 minutes, and was not working at the time train No. 258 entered the block. The learned trial judge submitted the point to the jury in the following language:

"The real complaint here is that the engineer in charge of the following train ran past, as the railroad expression is, this signal, which indicated to him that he should have stopped. Why it came about we do not know, but substantially that is the basis of the plaintiff's request to you to find that the railroad company was negligent."

We do not find error in the submission of this evidence to the jury, which found that the defendant company was negligent. This evidence, together with the failure to stop the train after it passed over the caps, is sufficient to justify the conclusion of the jury that Briscoe's death was due to negligence, for which the defendant was responsible.

[3] The defendant contends that—

"The measure of damage is totally wrong, and the theory of the trial judge in submitting the question of damages to the jury is partly responsible for the conclusions evidenced in their verdict."

The federal Employers' Liability Act provides that a common carrier engaged in interstate commerce shall be liable in damages in the case of death of such employee to his personal representative for the benefit of the surviving widow and children. United States Compiled Statutes, § 8657. The plaintiff was entitled to recover such an amount in damages as would fairly and reasonably compensate her and her children for the loss of pecuniary benefits which they might reasonably expect to have received but for Briscoe's death. Louisville & Nash. R. R. Co. v. Holloway, 246 U. S. 525, 38 Sup. Ct. 379, 62 L. Ed. 867; Gulf, Colorado & S. F. Railroad Co. v. McGinnis, 228 U. S. 173, 33 Sup. Ct. 426, 57 L. Ed. 785; Philadelphia & Reading Railroad Co. v. Marland, supra. The learned trial judge charged with reference to compensation that—

"The law is what they had a reasonable expectation of receiving, had this husband and father not been killed."

The plaintiff testified that the decedent gave her $30, and sometimes $40, and at one time $50, every two weeks, and sometimes only every month. In addition, the deceased took the plaintiff and her children on trips here and there at times.

[4] The defendant insinuated that the plaintiff was unfaithful to her husband, and it desired to show that fact, and to have the jury draw the conclusion that he did not know it; that he would some day discover it, and cease to contribute to the support of his wife and children, as he had been doing, or as he otherwise would have done. Whether or not the insinuations were true is not known, and under the issues in this case could not have been determined. If the testimony had been admitted, whether or not the jury believed it would be purely speculative, as its belief might or might not have been reflected in the verdict, and if it had affected the verdict, that fact could not have been known. But, if we assume that infidelity could have been established, it does not follow that her husband would ever have found it out, and, if he had, then it does not follow that it would have affected the amount of money he would thereafter have given to his family, and especially to his three children.

In our opinion, the testimony was properly excluded, and the judgment of the District Court is affirmed.