13569

BARTON v. SOUTHERN RY. CO. *ET AL.*

(171 S. E., 5)

*Messrs. W. C. Hughs* and *Frank G. Tompkins,* for appellants,

. *Messrs. Haynsworth & Haynsworth,* for respondent,

February 1, 1933.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE C. C. FEATHERSTONE.

This action is for the alleged wrongful death of W. S. Hamilton. The case was tried before Judge M. M. Mann and a jury, and resulted in a verdict for $15,000.00.

The defendants appealed. For convenience the parties will be designated as plaintiff and defendants rather than as re-

spondent and appellants, and Hamilton will be referred to as the deceased.

The effort will be to make the opinion short but comprehensive.

There are many exceptions which will be discussed in the order and under the heads contained in defendant's brief. They are:

(1) That the Court erred in refusing to direct a verdict for the defendants.

(2) That the Court erred in admitting incompetent testimony offered by the plaintiff as follows: (a) As to the distance in which train No. 46 was stopped at another time and place, without showing similar equipment, locality, and conditions; (b) by allowing the plaintiff to testify that he came near being struck by train No. 46 at another time and place; (c) by requiring engineer J. P. Mims to answer in detail as to the result of another accident at another time and place.

(3) That the Court erred in refusing to withdraw from the jury the issue of defective brakes on the ground that the evidence was insufficient in kind or amount to warrant a reasonable inference that the brakes were defective as alleged.

(4) That the Court erred in its charge to the jury as follows: (a) In charging upon the facts; (b) in charging and refusing to charge on the law.

The subheads employed by the appellants make clear in detail the grounds upon which they rely.

The defendant railroad being engaged in interstate business and the deceased, at the time of his death, being so employed, the case was tried under the federal statutes, and will be so considered here.

I. Ought the trial Judge to have directed a verdict in favor of the defendants?

The consideration of the exceptions presenting this question necessitates a brief statement of the salient facts.

The deceased was employed as section foreman on a section of the defendant company's double track railroad extending from the City of Easley northward towards Greenville. He was in charge of a squad of hands and had as a part of his equipment a motorcar and pushcar. On the morning of the accident he took the motorcar and the push-car to Lathem, about three miles distant from Easley, where he loaded the pushcar with scrap rail. Leaving one man at that point with flags, he proceeded towards Easley. Unloading the scrap rail at the toolhouse in Easley, and leaving the pushcar and laborers at the Glenwood Mill crossing, he and one of the laborers, Jay Williams, got on the motorcar and proceeded northward towards Lathem. The deceased occupied the front seat and Williams the rear seat of the motorcar. At this point the track is practically straight for a half mile. The day was clear and the vision unobstructed. North-bound passenger train No. 46 was two or three minutes late. The fireman testified that he saw ahead of the train the motorcar with the two men, but he did not at first know whether they were on the south-bound or north-bound track, that as soon as he realized that they were on the north-bound track he called to the engineer "hold her, hold her," meaning stop at once, and that the engineer immediately applied his brakes. There is testimony that the engineer also blew distress signals. Hamilton stopped the motorcar as soon as possible, and he and the negro helper endeavored to remove the motorcar from the track. Just before the train struck the motorcar, the negro, realizing the danger, escaped to a point of safety, but Hamilton continued in his efforts to remove the motorcar from the track. The collision occurred; the train ran some 392 or 492 feet beyond the collision carrying the deceased and the motorcar with it.

The plaintiff contended that under the evidence the jury was justified in concluding that either the brakes had failed to work, or else that the engineer, after discovery of the

peril of the deceased, failed to exercise due care to avoid the collision.

The plaintiff introduced three eyewitnesses. One was walking by the side of the railroad track and was passed both by the motorcar and the train. The other two were upon the highway, which parallels and is only a short distance from the railroad track. All three testified that they heard the distress signals, that the train was then traveling from 40 to 50 miles an hour, that they heard no sound of the brakes or any sign of slowing down until after the collision, and that the speed of the train had not been perceptibly reduced when the collision occurred.

The engineer (Mims) testified that when he applied the brakes he was about 100 yards south of the underpass. The distance from the underpass to the point of collision is 923 feet, so that the train traveled approximately 1,223 feet from the place where the engineer claims to have applied his brakes to the point of the accident. The witnesses for the plaintiff testified that they could see no perceptible decrease in the speed of the train; and the engineer admitted that he testified at the coroner's inquest that he was traveling 45 miles an hour when the collision occurred. The train continued running to a point 392 to 492 feet beyond the point of collision. The testimony as to these distances is quite clear and fully justified their adoption by the jury.

In such circumstances surely the jury had ample warrant for finding either that the brakes were not applied when it was discovered that human life was in danger, or else that the brakes were not operating and were defective, and either conclusion would have justified the verdict of the jury.

Finding that the brakes were defective, and that there was a failure to live up to the requirements of the Federal Safety Appliance Act (45 U. S. C. A. § 1 *et seq.*), amounted to negligence *per se* on the part of the railway company, and, if this was a proximate cause, carried liability for the death

of the deceased; for assumption of risk is wiped out by the express terms of the Act.

Nor is contributory negligence on the part of the plaintiff of any avail to defeat the action. It can operate only by way of reduction of damages.

In *Link v. Railway Co.,* 159 S. C., 545, 156 S. E., 481, 483, our Court, speaking through Mr. Justice Stabler, said: "It is now settled beyond controversy that the Federal Safety Appliance Act imposes upon the carrier an absolute duty to equip its cars with appliances prescribed in the Act, and to maintain such appliances in a secure condition; and the liability for failure to do so is absolute, regardless of negligence on the part of the defendant or contributory negligence on the part of the plaintiff"—citing cases from United States Supreme Court.

In the leading case of *Union Pacific R. Co. v. Huxoll,* 245 U. S., 535, at page 538, 38 S. Ct., 187, 188, 62 L. Ed., 455, the Court said: "The Federal Employers' Liability Act of April 22, 1908 (35 Stat., 65, c. 149 [45 U. S. C. A., §§ 51–59]), is confessedly applicable to the case and the rule of liability prescribed by this and the Safety Appliance Act of March 2, 1893 (27 Stat., 531, c. 196 [45 U. S. C. A., § 1 *et seq.*]), is, as the trial Court charged, that if the failure to have the power brake in working order contributed 'in whole or in part' to cause the death of deceased, the plaintiff in error would be liable in damages and neither contributory negligence nor assumption of risk could avail the company as a defense or in diminishing the damages."

It is useless to cite further authority as to a doctrine which has been so firmly established by decisions of the Supreme Court of the United States.

The defendants seemingly recognize this rule, but seek to escape its force by arguing that there was not sufficient testimony to show that the brakes were defective or failed to work.

It is true that the defendants' witnesses say that the

brakes were in good condition, and that none of the plaintiff's witnesses testify to imperfections in the brakes based on examination or inspection.

But as the Court said in *Union Pacific R. Co. v. Huxoll, supra,* 540 of 245 U. S., 38 S. Ct., 187, 188: "Demonstration is not required in such a case as we have here but responsibility for the accident must be determined upon the reasonable conclusions to be drawn from the evidence."

The plaintiff's witnesses testified to the things which they saw and heard—the blowing of the distress signals, the onrushing of the train with undiminishing speed, carrying both the deceased and the motorcar with it, and stopping only after it had run 392 to 492 feet beyond the point of the accident; these are facts which challenge attention.

And yet upon the authority of defendants' own testimony this train, if properly equipped with brakes, could have been stopped within 1,000 feet. The jury was justified in reaching the conclusion that the brakes were defective and were not properly functioning, or else that there had been a negligent failure to apply them. If it be shown that an appliance, if functioning properly, would produce a given result, and it be shown that on a given occasion it failed to produce this result, then the inference would be justified that it was not applied or was not properly functioning.

The old adage that "the proof of the pudding is in the eating thereof" is applicable. The test is not what the cook says, but how it appeals to the palate.

If the brakes had been functioning properly, and if applied at the point where the engineer claims he did apply them, certainly the train would have been stopped or its speed so greatly reduced as to have insured the safety of the deceased.

Without further amplification it is sufficient to say that this Court is satisfied that there was ample testimony to carry the case to the jury and to sustain a finding that the brakes were defective.

A failure to promptly apply the brakes after discovery of Hamilton's danger would have been evidence of gross negligence and utter disregard for human life. The train ran from the point where the engineer claims to have applied the brakes approximately 1,223 feet to the point of the accident, and continued beyond that point for 392 to 492 feet before it came to a stop. This is strong evidence either that the brakes were not properly applied or that they were not working properly, and the defendants find themselves between two horns of the dilemma.

The defendants by various subheads assigned reasons why their exception should be sustained. The observations already made in effect dispose of all of these, except that which raises the point that there was no proof that the failure to comply with the Safety Appliance Act was the proximate cause of Hamilton's death. We understand the implication to be that, notwithstanding the failure of the brakes, Hamilton had time to escape to a place of safety.

In the excitement of the moment, desiring above all things to remove an obstruction endangering the lives of innocent passengers, Hamilton might well have miscalculated time and distance, and have assumed that the train would have stopped, or its speed greatly reduced, before the actual collision. At any rate no assumption of risk or contributory negligence on his part would be a defense or deprive his widow and children from the right to compensation. Under any circumstances the evidence was sufficient to take the case to the jury. What has been said is sufficient to dispose of the suggestion that recovery is barred by the alleged failure of the deceased to live up to the rules of the company in the operation of the motorcar. But because of the zeal of counsel we will devote a brief space to the discussion of this matter.

An inspection of the rules reveals the fact that many of them are general in character. In effect they say that it is the duty of the deceased to know the sched-

ules, to have a standard watch and time-table; that he was to take proper measures for safety; that a car which could not be quickly removed from the track should be operated under orders. The deceased had the watch and time-table. The car was not within the class requiring train orders for operation; the train was not on time; the deceased had to work between trains.

The evidence is not absolutely clear that the deceased had violated any rule of the company. But even if he had violated any order or rule, and if this had operated as a proximate cause of the accident, this would not preclude recovery.

The case of *Spokane & Inland E. R. Co. v. Campbell,* 241 U. S., 497, 36 S. Ct., 683, 688, 60 L. Ed., 1125, is squarely and strongly in point. There the jury made a special finding that the violation by plaintiff of specific train orders was the proximate cause of the collision, but that the brakes were defective. A general verdict for the plaintiff was then found.

The Court held:

(1) That if the equipment was defective, or out of repair, the question as to whether this was due to the company's negligence was immaterial.

(2) That the fact an employee had violated an order for the operation of his train does not take him from the protection of the Act.

(3) That proof that an employee has violated an order for the operation of his train is not proof that he did so willfully, and that where willfulness is not found such violation is only negligence.

(4) That where the contributory negligence of the injured employee and the defendant's violation of the Safety Appliance Act are concurrent proximate causes, the contributory negligence of the employee is no defense and should be disregarded.

In the *Campbell case* there was evidence that the brakes had been examined and found in good condition immediately before the train left Cœur d'Alene. But the evidence of the motorman was that when 600 feet or more from the point of collision the brakes were thrown into emergency they first took hold, and then leaked and refused to work, and that the train could have been stopped in 300 feet if the brakes had been in proper condition. It was insisted that there was no evidence of a violation of the safety appliance Act, but the Supreme Court held that "it was a reasonable inference that there was some defect or want of repair in the valve or packing."

In the *Huxoll case* there was no direct testimony showing defect in the brakes, but the verdict of the jury rested upon conflicting evidence as to the speed of the train, the distance covered after the engineer had been notified, and as to the distance within which a stop could have been made had the brake been in working condition. The Supreme Court, in affirming the judgment, said that responsibility for the accident must be determined upon the reasonable conclusions to be drawn from the evidence.

For the foregoing reasons all exceptions under this head are overruled.

II. Did the Court err in admitting incompetent testimony of the plaintiff?

(a) As to the distance in which train No. 46 stopped at another time and place without showing similar equipment, locality, and conditions.

Barton was allowed to testify that some time before this accident he was at a railroad crossing where there was danger of collision with train No. 46 going at the usual speed—45 to 50 miles; that the engineer saw him, put on emergency brakes, and stopped within the length of the train and one coach, approximately 368 feet; that the train was going on down grade a little steeper than at the point of collision with Hamilton.

The only objection to the testimony was that it was not shown that the conditions were similar or that the train was composed of the same engine and cars. But this objection was met by Barton's testimony that it was the same train, containing same number of cars, looked like the same engine and same cars, and that other conditions were similar. He also testified that he had been living in Easley many years and was familiar with the trains on the Southern Railway.

The fact that the same train, going at approximately the same rate of speed, was stopped under similar conditions within approximately 368 feet was competent as bearing upon the question as to the distance within which the train could be stopped.

Where the question is as to whether a certain machine can accomplish a given result, one way it to speculate about it and another way is to show what the machine, properly functioning, has actually accomplished.

In our opinion no rule of evidence was violated. First Wigmore on Ev., pages 530, 531; 2 Jones on Ev., page 1378; *May Department Stores Co. v. Runge,* C. C. A., 241 F. 575, 578, *Settlemayer v. Southern Railway—Carolina Division,* 97 S. C., 85, 81 S. E., 465.

(b) By allowing the plaintiff to testify in detail that he came near being struck by train No. 46 at another time and place.

Barton's testimony on this point was merely introductory to the testimony just discussed and for the purpose of showing that the train was making an emergency stop.

(c) By requiring engineer Mims to answer in detail as to the result of another accident at another time and place.

An examination of the record will show that the complaint alleged that the railway company was guilty of negligence in retaining in its employ an agent (the engineer) who, by reason of his advanced age and infirmities, was unable to exercise proper care and

vigilance. On the cross examination of the engineer, Mims, the plaintiff sought to elicit from him an admission that he had testified at an inquest which followed a fatal collision, in which his train was involved, that his eyesight was defective, and that he was 76 years of age. The witness in reply stated that he did not remember what he said about his eyesight. The examination, however, was proper and violated no rule.

III. As to whether the Court erred in refusing to withdraw from the jury the issue of defective brakes because the evidence was insufficient in kind or amount to warrant a reasonable inference that the brakes were defective as alleged.

We have already fully covered this point.

IV. As to whether the Court erred in its charge to the jury.

(a) It is claimed that the Judge charged upon the facts.

The reference is to those charges referred to in Exceptions 15 and 16. In our opinion these charges contain correct propositions of law applicable to the case and are not charges upon the facts.

(b) As to whether the Judge erred in charging and refusing to charge on the law.

The reference is to those matters referred to in Exceptions 17 to 22.

We have carefully examined the entire charge. It is full and clear. It recognizes that the case is to be governed by the applicable federal statutes, and contains a clear statement of the principles which have been announced by the Supreme Court of the United States. In so far as the charge relates to matters of evidence and procedure, it is in strict accord with the doctrines of this Court.

The question as to whether the trial Judge should submit special issues to the jury is largely a matter of discretion. We find no abuse of discretion in this regard.

For the foregoing reasons all exceptions are overruled, and the judgment below is affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and BONHAM concur.