10014

FLOYD v. NEW YORK LIFE INS. CO.

(96 S. E. 912.)

1. TRIAL—RIGHT TO OPEN AND CLOSE—ADMISSION OF PLAINTIFF'S CAUSE —ANSWER—RULE OF COURT.—Under rule of Court permitting defendant to open and close if admitting plaintiff's cause by pleadings, where a complaint did not refer to application for insurance or its amendment, an answer denying truth of statements in application and pleading their untruth to avoid policy and averring that it was accepted as true and its amendment did not entitle defendant to open and close.

2. TRIAL—RIGHT TO OPEN AND CLOSE—ADMISSIONS OF PLAINTIFF'S CAUSE —TIME.—Under rule of Court permitting defendant to open and close, where he admits plaintiff's cause by the pleadings and assumes burden of proof, an offer to admit plaintiff's cause made at trial was too late.

3. TRIAL — SPECIAL VERDICT — DIRECTORY STATUTE. — Under Code Civ. Proc. 1912, sec. 321, providing that the Court may direct a special verdict upon any or all of the issues, the Court is not bound to so direct.

4. EVIDENCE—FACT OR CONCLUSION—REFLECTION ON WITNESS.—Where plaintiff characterized a release as a fraud on her, a question to a witness who had advised her to execute the release, as to whether a verdict for plaintiff would reflect on him was not objectionable as calling for opinion evidence, that not being a matter of opinion, but of knowledge.

5. INSURANCE—LIFE INSURANCE—FALSE STATEMENT IN APPLICATION— EVIDENCE.—In action on life insurance policy, defended on ground of insured's fraud and concealment in stating that he had not consulted any physician about an illness not specifically mentioned in application, evidence *held* not to show fraud or concealment.

6. RELEASE—VALIDITY—FRAUD.—A release from one claiming under a life insurance policy is invalid if obtained by insurer through false statement of insurer's agent.

7. RELEASE—VALIDITY—QUESTION FOR JURY.—In action on life insurance policy for $2,000, the validity of beneficiary's release to insurer's agent for $91.55, representing aggregate premium and interest thereon, *held* a jury question.

Before SEASE, J., Aiken, Fall term, 1917. Affirmed.

Action by Harriett L. Floyd against the New York Life Insurance Company. Judgment for plaintiff, and defendant appeals.

The second paragraph of the answer was as follows:

That the defendant on, to wit, the 2d day of December, 1912, duly received said application and said statements, representations, agreements and answers, and the report of the physician who examined him, at its home office, which is in the city of New York, where it considered said application, and upon consideration thereof said defendant there and then believed said statements, representations, declarations and answers to be full, complete and true, and relied and acted, and had a right to rely and act, thereon, and upon the faith of the truth thereof there and then accepted said application, and on, to wit, the 13th day of December, 1912, duly forwarded from its said home office said policies· as applied for for delivery, subject to an amendment to said applicant's said application to be signed by him, requesting as such amendment that the policies take effect as of the 7th day of November, 1912, instead of as of the date of said application, and thereupon said applicant duly signed said amendment and received said policies, which there and then had attached thereto a copy of his said application, statements, representations, agreements and answers and of his said amendment.

*Messrs. Jas. H. McIntosh* and *Thomas & Lumpkin,* for appellant, submit: *The motion for a directed verdict should have been granted on two grounds: First, because the respondent had executed and delivered to appellant, for valuable consideration, a release from all liability, and no fraud in its procurement was shown:* 101 S. C. 236; 108 S. C. 60; 90 S. C. 35; 21 S. C. Eq. 153; 69 S. C. 87. *Second, because the testimony showed that the policies in question were obtained by fraud, in that the applicant stated he had not consulted a physician for any ailment or illness in five years preceding his medical examination, whereas, the uncontradicted testimony showed that he had consulted two physicians and they had diagnosed his case as diabetes:* 101 Minn. 77; 111 N. W. 919; 61 S. C. 342; 111 U. S. 335; 83 Fed.

25—110.

636; 55 Atl. 23; 83 S. C. 239; 87 Atl. 428; 163 N. C. 367; 79 S. E. 80; 95 Atl. 104; 96 Pac. 62; 40 Atl. 1100; 241 U. S. 613; 153 Mass. 176; 26 N. E. 230; 231 U. S. 543; 83 Fed. 636; Cooley's Briefs on Ins., vol. III, 2009; 164 App. Div. 34 (N. Y.); 72 Fed. 413; 78 Kansas 146; 96 Pac. 62; 10 L. R. A. 666; 72 Ark. 620; 83 S. W. 321; 254 Ill. —; Ill. 80; 98 N. E. 261; 160 Ky. 572; 169 S. W. 984; 93 S. W. 553; 72 N. H. 572; 58 Atl. 502; 83 N. J. L. 296; 84 Atl. 1062; 147 N. C. 18; 60 S. E. 983; 29 N. D. 441; 151 N. W. 224; 53 Ore. 102; 99 Pac. 83; 196 Pa. St. 314; 46 Atl. 426; 176 Pa. St. 280; 35 Atl. 197; 94 Tex. 25; 57 S. W. 635; 97 S. C. 418. *The jury disregarded the charge of the Court, and the Circuit Judge erred in not granting the motion for a new trial:* 61 S. C. 340. *When the evidence is susceptible of only one reasonable inference the Court must declare what that inference as a matter of law:* 99 S. C. 417. *His Honor erred in charging the jury that the word "true" as used by the insured in his application when he declared that his answers were "full, complete and true," had been construed by the U. S. Supreme Court as synonymous with "honest, sincere and not fraudulent:"* 95 U. S. 673; 24 Law Ed. 563; 60 Law Ed. 1202; 80 S. C. 395; 61 S. C. 342. *The defendant should have been allowed to open and reply in evidence and argument in this case:* Circuit Court Rule 59; 107 S. C. 294; 60 S. C. 477; 77 S. C. 294; 35 S. C. 171; 39 S. C. 532; 47 S. C. 184; 98 S. C. 180. *Appellant's motion for special findings to be submitted to the jury should have been granted:* 99 S. C. 197. *Question raised by respondent in this Court for the first time cannot be considered:* 53 S. C. 132; 79 S. C. 54. *As to respondent's claim that the policies sued on, under their terms had become incontestable before the date of the alleged rescission agreement or release, and before the date of appellant's offer to rescind:* 97 S. C. 418; vol. I, Code of Laws 1912, sec. 2722.

*Messrs. John F. Williams,* and *Hendersons,* for respondent, submit: *The presiding Judge properly construed the answers in the medical examination to be representations and not warranties:* 25 Cyc., pp. 798, 805; 11 U. S., p. 330; 23 Am. Rep. 200; 121 (14?) Am. Rep., p. 10; 120 U. S. 187; 28 S. C. 437; 57 Am. Rep. 232; 14 (121?) R. C. L., sections 249, 205, 206, 237; 16 Enc. of Law 923. *To vitiate the policies, the answers must not only be false, but must be fraudulent, and the applicant must have known at the time he made the statements that his answers were false:* 107 S. C. 21; 106 S. C. 419; *Wingo v. Insurance Co.,* MS. *The misrepresentations must be material:* 25 Cyc. 805; 6 Cranch 404; Richards on Insurance, sec. 101; 93 S. C. 236. *A verdict could not possibly have been directed on the ground of fraudulent misrepresentation, as to the question of whether insured was suffering with diabetes:* 107 S. C. 21; *Wingo v. Insurance Co.,* MS.; 95 S. C. 196. *If there is a difference of opinion as to the effect of the testimony of the physicians, the question of the materiality must be left to the jury, and the testimony was amply sufficient to carry this issue to the jury:* 104 A. S. R., p. 604; 25 Am. Rep. 186; 65 N. W., p. 614; 8 Am. St. Rep., p. 894; 65 N. W., p. 614; 62 Mich. 306; 76 Mich. 428; 43 N. W. 373; 97 Mich. 513; 37 Am. St. Rep. 365; 56 N. W. 834; 108 Mich. 94; 65 N. W. 611; 126 Mich. 161; 85 N. W. 472; 112 U. S. 250; 5 Sup. Ct. Rep. 119; 28 L. Ed. 708. *As to what representations on the part of a party endeavoring to secure a release will vitiate the same, and what will not:* 106 S. C. 200; 107 S. C. 200; 14 Cyc. 72; 12 Ruling Case Law, sec. 94; 100 S. C. 221. *As to the question of incontestability:* 94 S. C. 300; 98 A. S. R. 226; 97 S. C. 420; 77 S. C. 300; 61 S. C. 450. *As to the definition of the word "true:"* 111 U. S. 335, 345; 52 Am. Rep. 232. *As to the opening and reply:* 35 S. C. 172; 63 S. C. 292; 107 S. C. 291; 68 S. C. 474.

July 4, 1918.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

Action upon two contracts of insurance on the life of Sherman Floyd. The plaintiff is wife of the deceased and beneficiary under the policies. After one mistrial the jury at a subsequent trial found for the plaintiff, and the insurance company has appealed.

These are the major circumstances which make the controversy: The policies of insurance are dated October 31, 1912; the insured died September 6, 1913, and admittedly of diabetes; on November 22, 1913, the company, esteeming that the policies voidable by reason of an untrue statement made by Floyd in his application for insurance, tendered to the beneficiary the premiums which had been paid, and took from her a release from further liability; the plaintiff in return has attacked this release as having been secured by the defendant's fraud. The two major issues in the Circuit Court and here were and are: (1) Was Floyd's answer made in the application for the policy so untrue as to avoid that instrument? And (2) was the release executed by the plaintiff secured from her under circumstances which avoided it? Allied to these two questions are two others, one to the charge and another to a refusal to charge. These major issues are reserved for a later discussion.

There are other minor issues which clog the way, and they will be now first disposed of. Of such there are three: (1) That the defendant had the right to open and close the case; (2) that the defendant was entitled to have a special verdict; and (3) that a certain answer of a witness, Quinby, was incompetent.

The rule of Court provides that the defendant shall begin and close "where he admits the plaintiff's cause by the plead-

ings, and takes upon himself the burden of proof." The answer nowhere expressly admits the plaintiff's cause. It neither admits, nor does it deny, the allegations of the complaint. It proceeds immediately "answering both causes of action * * * and as a defense" to set forth new matters constituting a defense to the plaintiff's case. The answer is made up of four paragraphs. The first refers only to the written application for insurance, and the contents of it. The third is a denial of the truth of the statements made in written application for insurance, and the allegation that when the assured made the application he had diabetes, tuberculosis and other ailments; and so much is pleaded to avoid the policy. The fourth refers only to the before stated agreement of the beneficiary to release the company from liability on the policy. The second paragraph is the only one which makes any remote admission of the plaintiff's case. Let it be reported. That paragraph is made up of three averments, to wit: (1) That the application for insurance was received by the defendants in New York on December 2, 1912, and upon its examination by the defendant it was accepted as true; (2) that the application was amended by the insured by a written request that the policies should take effect as of date of November 7, 1912, instead as of the date of the application; and (3) that thereupon the applicant and insured "received the said policies which there and then had attached thereto a copy of his application, statements, representations, agreements and answers, and of his said amendment." The third averment furnishes the only suggestion that the answer admitted the plaintiff's cause. It is true that therein the defendant admits that the assured received the policies; but the allegation goes further and charges that the reception was qualified by the amended application attached to the policies which worked an avoidance of them. The complaint made no reference to the application, or to the amendment of it. The answer then made not even an indirect admission of the allegation of the

complaint, but alleged matter in qualification of the contract the plaintiff set out. This was clearly not such an admission of the plaintiff's case as entitled the defendant to open and close. *Kennedy v. Moore,* 17 S. C. 464; *Boyce v. Lake,* 17 S. C. 481, 43 Am. Rep. 618; *McConnell v. Kitchens,* 20 S. C. 430, 47 Am. Rep. 845.

The offer by the defendant's counsel at the trial to admit the plaintiff's cause came too late; the admission must be by the record. *Johnson v. Wideman,* Dudley 325.

The Court was not bound to direct the jury to find a special verdict upon any or all of the issues. The statute directs that the Court may make such direction. Section 321, Code. In the cases relied upon by the appellant the Court had so directed, and we only held that the jury was bound to follow the direction. *Fertilizer Co. v. Railroad,* 99 S. C. 197, 83 S. E. 36. More than this, the instant action is for the recovery of money only; and in such a case the rendition of a special verdict is in the discretion of the jury. Code, sec. 321.

The witness, Quinby, was on the stand for the defendant to prove the circumstances of the release by the insured, set up in the fourth paragraph of the answer. On the cross-examination this occurred: "Q. If a verdict should be rendered for Mrs. Floyd, do you think it would be a reflection on you? A. No, sir. Mr. Lumpkin: We move to strike out the last question."

The witness had on the direct examination testified that he advised Mrs. Floyd, on the evidence presented to him and to her at that interview in the bank, to accept the premium money which had been paid and to surrender the policy. By her reply the plaintiff had characterized that transaction in the bank as a fraud upon her.

The appellant's counsel says in the brief that Mr. Quinby "has a State-wide reputation for business sagacity and integrity." If that be so, the jury might well have been induced

to conclude, apart from the objected question and answer, that a verdict for the plaintiff might reflect on the witness' reputation.   And the objected question was put to save Mr. Quinby from that awkward situation.   But the objection to the answer assigned in the brief is that it is "opinion evidence."   The answer was directed to the witness' conscious state—the only way to have ascertained that was out of the witness' mouth; it is not a matter of opinion, but of knowledge.

We now come to the major issues before stated.   The first of them arises out of the single answer made by Floyd to question 10 in the application; and that is the sole act of the applicant upon which the charge of fraud and concealment is predicated in order to avoid the policy.   The averment is that Floyd's answer to that question was untrue.   The appellant's counsel opens his argument on the issues with these words:

"Floyd stated in the medical examinathion (folio 279) that he had not in five years preceding that date (31st of October, 1912) consulted any physician for any ailment or illness."

As we shall show, that statement which is the main postulate of the argument, is altogether inaccurate.   Before setting out question 10 and the answer to it reference ought to be made to question 9 which preceded it, for question 10 is somewhat corollary to question 9.

Question 9 is as follows:

"9. Have you ever had or suffered from any of the following diseases? * * * A. Of the brain or nervous system? B. Of the heart or lungs?   C. Of the stomach or intestines, *liver,* kidneys or bladder?   D. Of the skin, middle ear, or eye?   E. Rheumatism, gout or syphilis?"   (The italics have been supplied.)

To each of these applicant answered, "No," and the exceptions and argument have not questioned the truth of the answers.   They each stand admittedly true.

Question 10 is as follows: "10. Have you consulted any physician for any 'ailment or illness *not mentioned above?*" (The italics are supplied.)

The answer was, "No," and that is the answer averred to be untrue.

The question is not directed to inquire if the applicant had suffered from any disease; it is not directed to inquire if the applicant had consulted any physician for any ailment or disease; it is directed to inquire if he had consulted any physician, and about an ailment or illness not mentioned in question 9. The burden, therefore, was on the defendant to prove: (1) That Floyd had consulted a physician; (2) that it was about an ailment or illness of his; and (3) that such ailment or illness was not one of those mentioned in question 9.

The testimony relied on to falsify Floyd's answer to question 10 is that of Drs. Briggs and Townes. The testimony of those witnesses only shows by inference that Floyd "consulted" them at all. They testified that they were called to see Floyd, and that they diagnosed his ailment to be diabetes, and that they treated him for that disease. It is conceded on both sides that Floyd died of that disease. The doctors did not testify that they definitely told Floyd what his ailment was, and there is no evidence that he knew the fact. But the defendant had to go further; it had to prove that diabetes was not a disease mentioned in question 9. There is not a shred of testimony to prove that fact. Indeed it may be that as a matter of medical science diabetes is a disease of the liver, and if that be so, then Floyd's answer to question 10 was strictly true. At all events, the defendant had to show that diabetes was not an ailment about which Floyd had answered to question 9. Our opinion, therefore, is that there was no testimony tending to show that Floyd's answer to question 10 was untrue. That being so, we need not go into that nebulous issue of law, which has been hotly contested at the bar, and

which is whether answers by the applicant are representations or warranties.

The next and second major issue arises out of the procurement by the defendant from the beneficiary of the policy of insurance for cancellation. The issue we have just decided settles the second major issue in large measure. The beneficiary had a good contract for $2,000; she surrendered that to the defendant's agent in a bank at Graniteville for $91.55, the aggregate premiums, and interest on them, which the company had already received from Floyd. And the surrender was made upon the *ex parte* statement to Mrs. Floyd by the company's agent, Garrison:

"That on the 31st of October, 1912, Sherman Floyd had presented himself to the company and applied for a policy of insurance, making declarations before the medical examiner, which were recorded in the application, that he had not suffered from any disease during the past five years; that he had not been treated by or consulted a physician during the past five years; that he had not met with or had suffered from an accident during the past five years."

The questions and answers we have before quoted and discussed are conclusive that this statement of the facts by the agent, Garrison, was definitely incorrect. And the release by the beneficiary must fall with the incorrect statement which procured it. At all events, the validity of the release as of the policies were under all the circumstances issues for the jury, and not for the Court.

There is now no need to discuss the issues made by exceptions 3, 4, 5 and 8; they have been dissipated by that which we have decided. We find it unnecessary, too, to consider the plaintiff's additional grounds.

The judgment below is affirmed.

MESSRS. JUSTICES HYDRICK, WATTS and FRASER concur.

MR. CHIEF JUSTICE GARY concurs in the result.