## 17069

LIDE ANTRUM, Appellant, v. HARTSVILLE PRODUCTION
CREDIT ASSOCIATION *ET AL.,* Respondents

(89 S. E. (2d) 376)

202

*Messrs. H. F. Bell,* of Chesterfield, and *Benny R. Greer,* of Darlington, *for Appellant,* ▮

*Messrs. John F. Wilmeth, Robert W. Shand* and *Philip Wilmeth,* of Hartsville, *for Respondents, Marion D. Hawkins, Frances L. Hawkins* and *Ann Boyle Hawkins,* and *Melvin Hyman, Esq.,* of Darlington, *for Respondent, Hartsville Production Credit Association,* ▮

October 4, 1955.

LEGGE, Justice.

On May 23, 1949, Hartsville Production Credit Association commenced in the Court of Common Pleas for

Darlington County an action to foreclose a mortgage of certain real estate in that county executed by Lide Antrum under date March 6, 1947. The mortgage under foreclosure recited that it was given to secure two certain promissory notes of the mortgagor, payable to the order of the Credit Association, one dated March 6, 1947, in the amount of six hundred ($600.00) dollars, and the other for nine hundred ($900.00) dollars dated November 13, 1946, the last mentioned note being also secured by a chattel mortgage; and the complaint alleged default in respect of both notes, and an unpaid principal balance of thirteen hundred ($1,-300.00) dollars. The Federal Land Bank of Columbia and the Land Bank Commissioner were named as parties defendant by virtue of senior mortgages held by them, but they were not served with process. The defendant Antrum having been adjudged in default, the cause was by order of the Honorable J. Woodrow Lewis, Judge of the Fourth Judicial Circuit, dated June 13, 1949, referred to the Master for Darlington County, who on the same day held a reference and reported, finding that the total amount secured by the mortgage, including interest to September 3, 1949, and attorney's fee, was one thousand four hundred seventy-four and 68/100 ($1,474.68) dollars, and recommending sale of the mortgaged premises, subject to the liens of the senior mortgages before mentioned. On the same day, June 13, 1949, Judge Lewis issued a decree of foreclosure in usual form, confirming the Master's Report and ordering that the mortgaged premises be sold by the Master, after due advertisement, on sales day in October, 1949, or on some convenient sales day thereafter.

The sale was held on sales day in December, 1949, and the property was first knocked down to the defendant Lide Antrum, who was highest bidder at two thousand six hundred fifty ($2,650.00) dollars; but, as he was without cash sufficient to meet the required deposit, the bidding was reopened shortly thereafter and the property then knocked down to Marion D. Hawkins, who was the highest bidder at

two thousand nine hundred ($2,900.00) dollars. Mr. Hawkins having complied with his bid, the property was conveyed to him by the Master by deed dated December 6, 1949. The surplus proceeds of the sale, after payment of the mortgage debt and costs, amounted to nine hundred seventy and 07/100 ($970.07) dollars. Antrum refused to accept this money, and it was retained in the custody of the Master until July 31, 1954, when it was paid to Antrum pursuant to a court order to which we shall later refer.

Antrum having refused to relinquish the property to the purchaser, and an affidavit to that effect having been submitted to the court, Judge Lewis issued, on December 30, 1949, an order requiring him to show cause on January 7, 1950, why a writ of assistance should not be issued directing the sheriff of Darlington County to remove him from the premises and to put the purchaser into possession. To this rule, by counsel not now representing him, he made return, setting forth:

"1. That the real property referred to and described in said rule to show cause was sold at public auction on the 5th day of December, 1949, and at said sale the defendant, being the highest bidder, purchased said property.

"2. That the pertinent facts, as to which defendant desires to present testimony by way of return to said order, are as follows: That after the official conducting the sale announced that defendant was the purchaser of said property, said official called upon defendant to deposit with him 5% of the bid as required by the decree of this Court ordering the sale of said property; that defendant did not have sufficient funds on his person to make said deposit; that the official conducting the sale told defendant that he would allow defendant to get the money and to hurry back; that defendant did obtain the amount of money required by said decree as deposit, and returned to the scene of the sale within twenty-five (25) minutes after he was told to get the money. Upon his return, defendant was informed that the property had already been sold".

Judge Lewis held the return insufficient, and by his order dated January 7, 1950, directed the Clerk to issue the writ, which was done on January 9, 1950; and presumably the writ was executed in due course and the purchaser, Marion D. Hawkins, entered into possession. From Judge Lewis' order of January 7, 1950, no appeal was taken.

On December 23, 1953, Lide Antrum filed in the foreclosure proceeding a petition, naming as respondents Hartsville Production Credit Association and the heirs of Marion D. Hawkins, then deceased, and praying that the foreclosure sale of December 5, 1949, be set aside and that the deed from the Master to Marion D. Hawkins be declared void and be cancelled of record for the following reasons:

1. The selling price, $2,900.00 was grossly inadequate;

2. The persons operating the sale had lulled the petitioner, who was an uneducated man, into a false sense of security by telling him that they would give him a reasonable time within which to obtain the required cash deposit, thereby inducing him to leave the place of sale, whereupon the property was immediately sold to another;

3. By such action, the persons operating the sale had chilled the bidding;

4. The persons operating the sale had refused his "legal tender" of the required deposit, said tender having been made partly in cash and partly in the form of a postal money order;

5. The chattel mortgage should have been foreclosed before resort was had to the real estate mortgage;

6. The real estate mortgage had been obtained by fraud, forgery and deceit;

7. The fact that in the foreclosure proceeding the filing of the affidavit of default, the issuance of the order of reference, the reference itself, the issuance of the Master's Report, and the issuance of the decree all took place one day after the petitioner's default, is indicative of fraud;

8. In the Master's Report and the decree, both dated June 13, 1949, interest on the mortgage indebtedness was

ordered paid to September 3, 1949, which effected, to the extent of interest allowed after June 13, 1949, a taking of petitioner's property without due process of law;

9. In the complaint in the foreclosure proceeding the amount secured was alleged to be $1,500.00 although the mortgage recited that it was given to secure advances aggregating $600.00.

To this petition the heirs of Marion D. Hawkins made return, alleging, among other things:

1. That the foreclosure sale had been delayed for more than an hour to enable the petitioner to obtain the required cash deposit; that upon his failure to return within the hour the bidding had been reopened; and that he had returned "before the proceedings were closed," but without any money;

2. That in the proceedings incident to the application by Marion D. Hawkins for a writ of assistance, the petitioner had made no contention that there had been fraud in the foreclosure or in the bidding at the sale;

3. That the property had been sold to Marion D. Hawkins subject to the Federal Land Bank mortgage securing an obligation of approximately $1,900.00, which Mr. Hawkins and the administrator of his estate had paid in addition to the purchase price of $2,900.00;

4. That after his acquisition of the property Mr. Hawkins, a purchaser for value without notice, had expended approximately $8,000.00 in its improvement; and

5. That because of these things the petitioner was estopped to interfere with their possession, and, further, the matter was *res judicata.*

Hartsville Production Credit Association:

1. Moved to strike, as sham and frivolous, all of the petition other than the formal allegations of its first paragraph; and

2. Demurred for insufficiency in that it appeared on the face of the petition that the petitioner had not tendered into

court or offered to pay to the Hawkins heirs the amount that Hawkins had expended for the purchase of the property, for payment of the first mortgage obligation, and for improvement of the property.

Reserving its rights under the motion and the demurrer, the Association also made return to the petition, pleading, in addition to a general denial, *res judicata,* laches, estoppel, and petitioner's failure to tender into court or pay to the heirs of Marion D. Hawkins the amounts hereinbefore mentioned.

The issues raised by the petition on the one hand and the motion, demurrer and returns on the other were argued before Judge Lewis; and on March 13, 1954, he issued his order sustaining the plea of *res judicata,* denying and overruling the motion and demurrer of the Association so far as they were based on other grounds, and dismissing the petition. From that order the petitioner has appealed; and from so much of it as held adversely to the "other grounds" of its motion and demurrer, the Association has appealed.

On July 31, 1954, on the *ex parte* petition of the appellant Antrum alleging that he was without funds with which to pay the expenses of his appeal to this court, and that he desired to have the surplus proceeds of the foreclosure sale, in the hands of the Master as before stated, paid to his attorneys without prejudice to any of his rights, Judge Lewis issued an order directing that such money be so paid, the order concluding with the following: "This money is paid without prejudice in any way to the petitioner, and all rights that he has just as if he had not accepted the money are hereby reserved for him." Pursuant to that order the said funds were paid to his attorneys. Thereafter the respondents moved before Judge Lewis to dismiss Antrum's appeal upon the ground that his acceptance of the surplus proceeds of the sale constituted ratification of the sale and waiver of all things complained of in his petition of December 23, 1953. This motion was denied by Judge Lewis' order of September 1, 1954. From that order respondents have appealed.

The doctrine of *res judicata* is a fundamental rule of our jurisprudence and has been so often expounded that no extended discussion of it is necessary here. It rests upon the sound principle of public policy that after final decision of a controversy by a court of competent jurisdiction the party against whom the decision was rendered, and those in privity with him, should not be permitted again to litigate, against the successful party or those in privity with him, the issues that were there decided. 30 Am. Jur., Judgments, Sections 161, 165. While the doctrine has been generally said to bar relitigation not only of issues actually decided in the former proceeding, but also of such issues as could have been there presented for decision, the application of the defensive bar to the latter rests, strictly speaking, upon the doctrine of estoppel rather than that of *res judicata.* Cf. *Watson v. Goldsmith,* 205 S. C. 215, 31 S. E. (2d) 317; *First National Bank of Greenville v. United States Fidelity & Guaranty Co.,* 207 S. C. 15, 35 S. E. (2d) 47, 162 A. L. R. 1003.

"Before the defense of *res judicata* is made good, the following elements must be shown: (1) The parties must be the same or their privies; (2) the subject matter must be the same; and (3) while generally the precise point must be ruled, yet where the parties are the same or are in privity the judgment is an absolute bar not only of what was decided but of what might have been decided." *Bagwell v. Hinton,* 205 S. C. 377, 32 S. E. (2d) 147, 156. See also *Dunlap v. Travelers Ins. Co.,* 223 S. C. 150, 74 S. E. (2d) 828.

In the case at bar, the issue before Judge Lewis upon the application by Marion D. Hawkins for a writ of assistance was the validity of the foreclosure sale, upon which Hawkins' right to possession of the property depended. Defendant resisted the application, setting out in his return the ground upon which he contended that the sale was invalid; and as we have said, the matter was decided adversely to him by Judge Lewis' order of January 7, 1950,

from which he did not appeal. Nearly four years later he filed his present petition, contending that the foreclosure sale was invalid upon the same ground that he had advanced in the proceeding for the writ of assistance, and upon several other grounds, hereinbefore set forth, all of which must have been as well known to him then as they are now. Two of them, to wit: the contention that the chattel mortgage should have been first foreclosed, and the claim that the real estate mortgage had been obtained by fraud, forgery and deceit, go to the merits of the foreclosure proceeding rather than to the validity of the sale itself. They should have been pleaded by way of answer to the complaint in foreclosure. But the defendant let the case go by default, and he made no application within the prescribed time, Code 1952, § 10-1213, to have the judgment vacated because of mistake, inadvertence, surprise or excusable neglect.

We do not agree with appellant's suggestion that, since no testimony was taken on the rule to show cause, Judge Lewis' order of January 7, 1950, was not an adjudication of the merits and therefore should not be held to bar the instant proceeding. The order, which adjudged appellant's return insufficient on its face, was a final determination of that controversy, having precisely the same effect as an order sustaining a demurrer to a pleading. As to it, appellant's remedy was by appeal.

It may be, as appellant suggests, that he would have fared better had he not been advised to permit the foreclosure to proceed uncontested. And we are not insensible to his lament that ever since the foreclosure sale he has, until his present counsel took his case, sought representation in vain. But such considerations cannot avail against the fundamental legal principles to which we have referred. The judgment of foreclosure and the order directing the issuance of the writ of assistance constitute an insuperable bar to the present proceeding. That conclusion renders consideration of the cross-appeals unnecessary.

Affirmed.

Baker, C. J., and Stukes, Taylor and Oxner, JJ., concur.