### 17198

CLANTON'S AUTO AUCTION SALES, INC., Appellant, v. JOE CAMPBELL and MRS. BESSIE S. HODGES and J. P. HODGES, as Co-Executors of the Will of K. B. Hodges, Deceased, Respondent, CLANTON'S AUTO AUCTION SALES, INC., as Assignee of Harmon Motor Company, Appellant, v. JOE CAMPBELL and MRS. BESSIE S. HODGES and J. P. HODGES, as Co-Executors of the Will of K. B. Hodges, Deceased, Respondents

(94 S. E. (2d) 172)

*Messrs. Leroy M. Want* and *Robert L. Kilgo,* of Darlington, *for Appellant,*

*Messrs. Russell D. Miller* and *Joseph P. Edens, Jr.,* of Bennettsville, *for Respondents,*

August 8, 1956.

Legge, Justice.

These cases arose out of a collision in Marlboro County on September 25, 1952, between a Ford automobile alleged by the plaintiff to have been owned by it at that time, and a Chevrolet truck belonging to K. B. Hodges, now deceased, which was being driven by the defendant Campbell.

In the first case the trial judge, Honorable J. Martin, Jr., denied plaintiff's motion for directed verdict and submitted the issues to the jury, which found for the defendant. Thereafter plaintiff moved for judgment n. o. v. or, alternatively, new trial; and the appeal is from the order denying that motion.

In the second case the appeal is from an order of Honorable J. Woodrow Lewis, Judge of the Sixth Circuit, dismissing the action as barred by the judgment in the former.

Plaintiff (hereinafter referred to as Clanton) operates a wholesale automobile auction market in Darlington County. On September 4, 1952, it sold the Ford automobile in question to Harmon Motor Company, of Raleigh, North Carolina. Thereafter, it having been rumored that the car had been stolen prior to Clanton's acquisition of it, Clanton arranged by telephone to repurchase it from Harmon, and the latter agreed to redeliver it to Clanton on the next trip that one of its employees should make to the Clanton market. It was on this trip that the collision occurred. The automobile was demolished. Later, it developed that the rumor as to its having been stolen was false.

In August, 1954, Clanton brought this action against Campbell and the personal representatives of the decendent Hodges, seeking to recover damages for the destruction of the automobile, which, in paragraph 2 of the complaint, it alleged was its property at the time of the accident on Sep-

tember 25, 1952. Following are the allegations of the first defense in the answer of the defendants:

"1. That they deny each and every allegation in said complaint contained, except so much as may be hereinafter specifically admitted, qualified or explained.

"2. Admit the allegations of paragraph one (1) of the complaint (*i. e.* corporate existence of plaintiff, residence of defendants, and qualification of the personal representatives).

"3. Admit so much of the allegations of paragraph 2 (2) as allege that on or about the 25th day of September, 1952, a Ford automobile was being driven west along South Carolina Highway No. 34 in Marlboro County, and that the same was involved in an acident with a Chevrolet truck, the property of K. B. Hodges, since deceased, but the remaining portions of said allegations are specifically denied.

"4. That the allegations of paragraphs three (3), four (4) and (5) (*i. e.* allegations of negligence on the part of the truck driver, and of damage to plaintiff's automobile) are denied, and defendants deny, on information and belief, that the Ford automobile is, or was, the property of the plaintiff."

In addition, defendants pleaded contributory negligence. Upon the trial the plaintiff introduced in evidence the bill of sale under which it had originally acquired the automobile, the bill of sale dated September 4, 1952, under which it had sold it to Harmon, and its cancelled check for $1,335.00, dated September 26, 1952, which it had given to Harmon in its repurchase.

The trial judge refused plaintiff's request that a special verdict be found on the issue of ownership. Instead, he charged the jury that they must first determine the question of ownership and that, if they should find that the plaintiff owned the automobile at the time of the acident, they should then proceed to consider the issue of negligence.

The jury having found for the defendants, plaintiff moved for judgment n. o. v., or, failing that, for a new trial, upon the following grounds:

1. That the verdict was without evidentiary support;

2. That the trial judge erred in refusing to instruct the jury to find a special verdict on the issue of ownership of the automobile; and

3. That the trial judge erred in submitting the issue of ownership to the jury because (a) the defendants had not alleged who owned the automobile if the plaintiff did not own it, and (b) defendants' denial of plaintiff's ownership had been made on information and belief and was unsupported by testimony.

Judge Martin's refusal to grant this motion is challenged by five exceptions, presenting two questions, to wit:

1. Was the issue of ownership raised by the answer? (Exceptions 1, 2, and 3.)

2. Was there error in refusing plaintiff's request for a special verdict on the question of ownership? (Exceptions 4 and 5.)

Section 10-652 of the 1952 Code provides that the answer must contain "a general or specific denial of each material allegation of the complaint controverted by the defendant or of any knowledge or information thereof sufficient to form a belief."

Denial "on information and belief" is manifestly not the same as denial "of any knowledge or information sufficient to form a belief." The former is predicated upon information in the possession of the pleader; the latter, upon the absence of such information. But although the Code does not expressly provide for denial "on information and belief," the property of such a denial would appear to be recognized in Section 10-604, which declares that the verification of any pleading must be to the effect "that the same is true to the knowledge of the person making it except as to those matters stated on information and belief and, as to those matters, that he believes them to be true." See 41 Am. Jur., Pleading, Section 151; 71 C. J. S., Pleading, §§ 149, 150; *Maclay v. Sands,* 94 U. S. 586, 24 L. Ed. 211; *Bank of Enoree v. Yarborough,* 120 S. C. 385, 113 S. E. 313.

Denial in either of the forms just mentioned with respect to the plaintiff's capacity to sue, or to facts presumptively within the defendant's knowledge, or to matters of public record, is not sufficient to put such facts in issue. Thus it was held in *Land Mortgage Investment & Agency Company v. Williams,* 35 S. C. 367, 14 S. E. 821, that the plaintiff's corporate existence had not been put in issue by defendant's denial of knowledge or information sufficient to form a belief as to it. To the same effect is *Pegues v. Polson,* 128 S. C. 456, 123 S. E. 8. And in *Bank of Enoree v. Yarborough, supra,* denial, upon information and belief, of the plaintiff's incorporation was likewise held insufficient. See also *Blackwell v. First National Bank of Columbia,* 185 S. C. 427, 194 S. E. 339, where allegations charging a bank with negligence in having failed to ascertain the identity of a person presenting a check endorsed by the plaintiff were held not to have been effectively controverted by the bank's denial of them "upon information and belief."

In the case at bar it will be noted that in paragraph 3 of the first defense the denial of plaintiff's ownership of the Ford automobile is categorical, and not upon information and belief. But apart from that, the denial upon information and belief, in paragraph 4, was sufficient to put plaintiff's ownership in issue. Such ownership was not a matter of public record or presumptively within defendants' knowledge, and to put plaintiff to the proof of it did not require specific and unqualified denial. Moreover, if, as plaintiff contends, the denial was insufficient, its insufficiency was apparent on the face of the first defense, rendering that defense subject to demurrer. But plaintiff did not demur, and obviously considered the issue of ownership as having been raised, for it offered evidence thereabout.

Appellant suggests that since the only evidence of ownership of the automobile was that which it had introduced, the trial judge erred in submitting the question of ownership to the jury. But we think that the question was properly submitted, especially in view of the

circumstances of the transaction between appellant and Harmon, to which reference has already been made.

The request for a special verdict on the question of ownership was addressed to the trial court's discretion. Code 1952, Section 10-1453; *Floyd v. New York Life Ins. Co.*, 110 S. C. 384, 96 S. E. 912; *Key v. Carolina & N. W. Ry. Co.*, 165 S. C. 43, 162 S. E. 582; *Barton v. Southern Ry. Co.*, 171 S. C. 46, 171 S. E. 5. Appellant suggests that without the answer to that question it cannot know to whom it must look to make good its loss, and that the refusal of its request for a special verdict may lead to multiplicity of suits. But such considerations, under the record before us, do not warrant our holding that refusal of the request was abuse of the trial court's discretion.

We conclude, therefore, that the appeal in the first case is without merit.

After the adverse judgment in the case before mentioned, Clanton, as assignee of Harmon, brought another action against the same defendants to recover damages for the destruction of the Ford automobile before mentioned. The complaint in the second action is identical with that in the first, except as follows:

1. In paragraph 2 of the complaint in the first action, the automobile is referred to as "plaintiff's Ford automobile"; in paragraph 2 of the complaint in the second action it is referred to as "a Ford automobile belonging to plaintiff under circumstances hereinafter related."

2. The following allegations, absent from the former, appear in the latter:

"4. That previous to said accident the said Ford automobile had been purchased from the plaintiff, Clanton's Auto Auction Sales, Inc., by Harmon Motor Company, Inc., of Raleigh, N. C., the plaintiff giving to said Harmon Motor Company its warranty of title; that, upon information and belief that the car had been stolen before it reached plaintiff's wholesale auction market by person or persons unknown to

it, the plaintiff offered to repurchase said car back from Harmon Motor Company, which it did by telephone and which vehicle Harmon Motor Company offered to deliver to plaintiff on the next trip of one of its employees to the Clanton Market.

"5. That the accident detailed above occurred while the car was being delivered to Clanton's by Harmon Motor Company under purchase agreement already completed; that because it regarded itself as the owner of the Ford in question and on information and belief, looked to the defendants herein to make good its loss from the accident, plaintiff at once paid to Harmon Motor Company the agreed purchase price; that it quickly developed that the car in question was not a stolen vehicle, leaving the plaintiff the loser solely because of the accident to its car.

"6. That although plaintiff claims to have owned this car subsequent to its repurchase and prior to the said accident, its ownership of said car has been put in question by these defendants in prior litigation; that said litigation left unanswered the question of ownership; that therefore, plaintiff has taken a bill of sale of whatever interest Harmon Motor Company, previous owner of the car, might have, and an assignment of any right of action it might have, and these papers are made a part of this complaint as if incorporated fully at this point."

3. The bill of sale and the assignment referred to in paragraph 6 of the complaint in the second action are as follows:

"Bill of Sale

"State of North Carolina

"County of Wake

"Know all men by these presents, that Harmon Motor Company of Raleigh, North Carolina, party of the first part, for and in consideration of the payment to it of the sum of $1,335.00 on or about September 26, 1952, and the further payment to it at this time of $3.00, receipt of both of which from Clanton's Auto Auction Sales, Inc., is hereby acknowledged, has granted, bargained, sold and delivered, and by

these presents does grant, bargain, sell and deliver, unto Clanton's Auto Auction Sales, Inc., the party of the second part, all its right, title and interest if any in the below described vehicle:

"One 1950 Ford, Tudor, Motor No. Boat 116674.

· "To have and to hold the said vehicle unto the party of the second part, its successors and assigns forever.

"And the said party of the first part, claiming no interest in the said vehicle at the time of this instrument but claiming rather that the sale to the party of the second part was completed in September, 1952, makes no warranty as to the title of the party of the first part.

"In witness whereof, the party of the first part has hereunto set its hand and seal this 13th day of January, 1955.

"(Signed) Harmon Motor Company, By Arnold J. Harmon, President.

"In the presence of: Catherine W. Jones, Banks Crandall."

"Assignment

"State of North Carolina

"County of Wake

"In consideration of the sum of $1,335.00 paid to us on or about September 26, 1952, and the further payment to us of $3.00, by Clanton's Auto Auction Sales, Inc., receipt of both of which is hereby acknowledged, we hereby sell, assign, transfer and set and deliver over unto the said Clanton's Auto Auction Sales, Inc., all our right, title and interest in and to, if any, one 1950 Ford, Tudor, Motor No. Boat 116674, including any right of cause of action we might have against Joe Campbell, and Mrs. Bessie Hodges and J. P. Hodges, as co-executors of the estate of K. B. Hodges, deceased, or any other party, growing out of the wrecking of said vehicle.

"Said assignment is made without recourse on us.

· "Given under the hand and seal of the Harmon Motor Company this 13th day of January, 1955.

"(Signed) Harmon Motor Company, By Arthur J. Harmon, President.

"In the presence of: Catherine W. Jones, Banks Crandall."

It will be seen that in the second action Clanton, although denominated assignee of Harmon, asserts ownership of the automobile by virtue of its purchase from Harmon prior to the accident. Its claim of ownership is therefore exactly the same as it was in the former action. The bill of sale is, on its face, confirmatory, not investitive, expressly negativing ownership by Harmon at the time of its execution and asserting that the sale of the automobile to Clanton was completed in September, 1952. Such also is the clear implication of the assignment. While neither the bill of sale nor the assignment mention the precise date in September, 1952, upon which the sale to Clanton was completed, the complaint itself plainly states that it was prior to September 25, the date of the accident (paragraphs 5 and 6, ante, and paragraph 7, wherein it is alleged "that the injuries and resulting damage to plaintiff's automobile were caused," etc.). Plaintiff therefore acquired no title or right of action by virtue of the bill of sale and assignment, because Harmon had none to convey or assign. The parties and the issues in both actions being thus identical, the judgment in the former is *res judicata,* precluding maintenance of the latter. *Antrum v. Hartsville Production Credit Association,* 228 S. C. 201, 89 S. E. (2d) 376.

The judgment of the lower court in each case is affirmed.

STUKES, C. J., and TAYLOR, OXNER and MOSS, JJ., concur.